IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PLAZA ATHÉNÉE, S.E.,

Plaintiff

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,                                   CIVIL 01-2597 (PG)

Defendant and Third-Party Plaintiff

v.

INGENIEROS & PROYECTISTAS,
INC., et al.,

Third-Party Defendants

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  FACTUAL AND PROCEDURAL BACKGROUND

This diversity action for breach of contract and collection of monies was filed by Plaza Athénée, S.E. (hereinafter "PA") against United States Fidelity and Guarantee Company (hereinafter "USF&G").  The main allegation in PA's complaint is that it entered into an agreement with Ingenieros & Proyectistas, Inc. (hereinafter "I&P"), a contractor, for the construction of a condominium located in Guaynabo, Puerto Rico and that USF&G, a surety, issued a performance and payment bond on behalf of I&P to guarantee completion of the aforementioned project.  PA is seeking enforcement of the obligations undertaken by USF&G with the issuance of the

CIVIL 01-2597 (PG)                     2

payment and performance bond.   While PA alleges that I&P abandoned the construction project, USF&G maintains that there is no claim against it because the project was substantially completed.   In due course, USF&G filed a third-party complaint against I&P in its capacity as indemnitor (because I&P as contractor and the individuals named in the third-party complaint executed a General Indemnity Agreement).   The following are the specific facts giving rise to this case.

Founded in 1996, PA is a special partnership organized and existing under the laws of the Commonwealth of Puerto Rico.   As owner and developer of the project, PA entered into a construction contract with I&P for the construction of the Plaza Athénée Condominium.   The contract was subscribed using the standard forms prepared by the American Institute of Architects and incorporates a number of documents and materials which as a whole, constitute the agreement between the parties.   The contract price for the project was $7,589,000.00.   Under the terms of the contract, I&P was supposed to commence work on the project on November 17, 1997.   The project had to be substantially completed within 608 calendar days or by July 17, 1999.

On September 29, 1997, defendant USF&G issued Payment and Performance Bond No. 2970123 to guarantee I&P's faithful performance of its duties and obligations under the construction contract.   The bond also guarantees that the payments due by I&P to its suppliers and contractors would be made.   Additionally,

CIVIL 01-2597 (PG)                    3

the bond contains a description of the project and incorporates the terms, covenants and conditions of the construction contract.

It is alleged that on May 12, 2000, I&P was terminated for being in default pursuant to a certificate issued by the architect retained under the contract. The termination was made effective June 30, 2000. However, on July 7, 2000, after the first default termination, the parties entered into an "Interim Understanding and Agreement." The purpose of this agreement was to relieve I&P of the consequences of the first default termination and to clarify the obligations of the parties under the contract. Particularly, the agreement explicitly defined in unequivocal terms what substantial completion of the project meant so there would be no misunderstanding as to what needed to be accomplished. USF&G allegedly agreed to the terms and conditions of the "Interim Understanding and Agreement." Furthermore, PA's complaint alleges that on March 6, 2001, PA and I&P executed a letter agreement. The same did not modify any of the terms and conditions of the "Interim Understanding and Agreement." It simply delineated and refined the respective responsibilities of the parties with respect to the conclusion of the work at the condominium.

I&P is alleged to have breached the terms and conditions of the March 6 letter agreement by failing to comply with certain obligations set forth therein. In addition, I&P allegedly abandoned the work on April 9, 2001, without having achieved substantial completion of the condominium. Therefore, on June 21, 2001,

CIVIL 01-2597 (PG)                    4

and allegedly after numerous notices, the architect once again certified I&P's default.   That same date, PA notified via letter that I&P had been terminated, effective immediately, for its default under the contract.   Pursuant to this second default termination, PA demanded from USF&G that the latter take over completion of the work at the condominium.   USF&G in turn directed PA to undertake completion of the project and to keep records of the expenses incurred in doing so. PA complied by submitting evidence of the expenses incurred in completing the work, including warranty work, punchlist work and expenses resulting from I&P's default.   PA demanded payment from USF&G but the latter has allegedly failed and refused to comply with its obligations.

There are two separate motions for summary judgment pending before the court.  On December 31, 2004, USF&G filed a motion for summary seeking dismissal of PA's complaint in its entirety.   (Docket No. 127.)   On the same date, USF&G moved for partial summary judgment against I&P arguing that as a matter of law, I&P is liable to it for indemnification and reimbursement.  (Docket No. 126.)  The respective oppositions of PA and I&P appear in the record at Docket Nos. 156 and 159.  USF&G filed replies to both I&P's and PA's oppositions to summary judgment on March 11, 2005 and March 29, 2005 respectively.   (Docket Nos. 172, 175.)  PA filed a surreply to USF&G's reply on May 3, 2005.  (Docket No. 180.)  These matters were referred to me for a report and recommendation on January 24, 2005. (Docket No. 150.)  After considering the arguments of the parties, the evidence in the record

CIVIL 01-2597 (PG)                    5

and for the reasons set forth below, it is my recommendation that USF&G's motion for summary judgment in relation to PA's complaint be DENIED. As to the motion for partial summary judgment against I&P, I recommend that the same be GRANTED.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant.  López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)).  A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-

CIVIL 01-2597 (PG)                           6

37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1993)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002).  A fact is considered material if it has the potential to affect the outcome of the case under applicable law.  Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

### III.  APPLICABLE LAW AND ANALYSIS

A.  Motion for Summary Judgment Against PA

USF&G advances several general contentions in support of its motion for summary judgment with respect to PA's complaint.  First, USF&G claims that the liquidated damages clause contained in the construction contract is unenforceable against it because:  (a) it is void ab initio since it penalizes the contractor for not completing the project on time without regard to any delays occurring through no fault of the contractor or if the owner causes or contributes to the delay; (b) it is void ab initio because the clause as drafted penalizes the contractor for not completing the project on time without taken into account the anticipated losses that may be sustained by the owner or the losses actually sustained; (c) the clause is not enforceable against the surety; (d) the owner of the project and its

CIVIL 01-2597 (PG)                          7

representative contributed to the delay by requesting numerous changes to the original terms of the contract without USF&G's consent; (e) it would be inequitable to impose on the surety a penalty that is 10 times the amount of actual damages specially since PA did not give USF&G a chance to cure the deficiencies; and (f) the surety bond does not include a liquidated damages provision and the surety has no obligation to perform beyond the undertaking in the bond.  Second, USF&G claims that it has no obligation to perform under the bond inasmuch as PA failed to give seven days written notice of its intention to declare default as required by the contract.  Third, USF&G maintains that PA was not entitled to terminate I&P because there was no substantial breach of contract since all the units were substantially completed, able to be used as intended and sold at a substantial profit to numerous buyers.  Finally, it is USF&G's contention that it is entitled to be released from the obligation since PA altered the terms of the contract with the contractor without USF&G's consent thus materially altering the surety's risk under the bond.

In opposition, PA generally argues that summary judgment must be denied because the arguments advanced by USF&G are legally unsound and because there are a number of material factual issues that remain disputed.  Specifically, with respect to liquidated damages, it is PA's position that under Puerto Rico jurisprudence, the clause is valid as drafted and enforceable against the surety because the bond promises to answer for any breach of any covenant in the

CIVIL 01-2597 (PG)                                8

construction contract, including the liquidated damages clause.  PA further claims

that any contention regarding owner-caused delays to the project by requesting

numerous change orders is belied by the record inasmuch as the changes did not

affect the critical path of the project or materially alter the terms of the contract.

Also contradicted by the record, according to PA, is the allegation made by USF&G

that the liquidated damages claimed are 10 times greater than the actual losses

incurred because of I&P's breach.  PA submits that the liquidated damages are far

less than the actual losses suffered by it as a result of I&P's delay and eventual

abandonment of the project.   Finally, PA contends that the project was not

substantially completed and that the surety was given sufficient notice of the

contractor's breach and ample opportunity to cure the deficiencies.  In all, PA

argues that USF&G cannot meet its burden of showing its entitlement to judgment

as a matter of law.

     1. Liquidated Damages

     USF&G argues that the liquidated damages clause contained in the

construction contract is void ab initio and unenforceable against it.  Among other

things, USF&G maintains that the clause, as drafted, is void because it penalizes the

contractor and consequently the surety, without considering fault, owner-caused

delays and the amount of actual losses incurred.  Additionally, USF&G contends that

the clause cannot be enforced against it because the surety agreement does not

contain a liquidated damages clause. USF&G also claims that it would be inequitable

CIVIL 01-2597 (PG)                           9

to assess liquidated damages against it because said damages are 10 times larger than the actual losses sustained by the owner who in the end sold the individual units at a substantial profit.

Puerto Rico law,[1] particularly articles 1106 to 1109 of the Puerto Rico Civil Code, govern the inclusion of penal clauses ("cláusulas penales") in contracts. Article 1106 provides that "[i]n obligations with a penal clause[,] the penalty shall substitute indemnity for damages and the payment of interest in case of nonfulfillment, should there be no agreement to the contrary. This penalty can only be enforced when it is demandable in accordance with the provisions of this title." 31 P.R. Laws Ann. § 3131. Puerto Rico's Civil Code also provide that "[t]he court or judge shall equitably modify the penalty if the principal obligation should have been partly or irregularly fulfilled by the debtor." 31 P.R. Laws Ann. § 3133.[2] The Puerto Rico Supreme Court has expressly held that in Puerto Rico it is possible and legal to agree upon a penal clause when entering into a contract. See Rochester Capital Leasing Corp. v. Williams Int'l Ltd., 103 D.P.R. 163 (1974). A penal clause releases a person from the obligation of proving damages, Consolidated Mortgage & Fin. Corp. v. Cooley, 103 D.P.R. 6 (1974), since the primary purpose of such

_____

[1]This is a diversity action. Therefore, Puerto Rico substantive law controls. Erie R. Co. v. Tompkins, 304 U.S. 64, 92 (1938); see also Rojas-Ithier v. Sociedad Española de Auxilio Mutuo y Beneficiencia, 394 F.3d 40, 43 (1st Cir. 2005).

[2]In the present case, USF&G is not arguing that the amount set forth in the liquidated damages clause is on its face excessive or unreasonable so as to invoke the court's authority to modify, in equity, the penal clause. See Demas v. Builders Ins. Co., 9 P.R. Offic. Trans. 1037, 1049 (1980).

CIVIL 01-2597 (PG)                              10

clauses is the evaluation beforehand of the damages that a certain breach of contract may produce.  See Simonet v. Igaravídez, 90 D.P.R. 1 (1964).  But anticipated liquidation of damages is not the only purpose of penal clauses.  They may also have a punitive function, introducing elements of restriction and threat to compel the debtor to perform.  Jack's Beach Resort, Inc. v. Compañia de Turismo de P.R., 12 P.R. Offic. Trans. 433, 436 (1982).  In such a situation, the court must look not at the language of the contract, but at the effect that the clause has on the particular obligation to remedy in equity the excessive or onerous nature of said clause under article 1108.  Id.

Furthermore, when a liquidated damages clause is included in a construction contract and the  terms of said contract are in turn incorporated in a performance bond, the surety must answer for the nonperformance of the contractor, including the liquidated damages agreed to in the penal clause.  See Olazabal v. United States Fid. & Guar. Co., 3 P.R. Offic. Trans. 624, 642 (1975); see also Demas v. Builders Ins. Co., 9 P.R. Offic. Trans. 1037, 1048-49 (1980); WRC Props., Inc. v. Santana, 16 P.R. Offic. Trans 160, 172 (1985) ("[T]he surety who expressly secures a principal obligation is subject to give compliance to a penal clause.").  Thus, it is unquestionable that penal clauses are not only valid in Puerto Rico, but that they are enforceable against a surety that issues a performance bond where all the terms of the construction contract are expressly incorporated.

The penalty clause at issue in this case reads in pertinent part as follows:

CIVIL 01-2597 (PG)                         11

   In addition, as penalty for any delays in excess of the contract time the parties herein agree that Contractor shall pay to Owner liquidated damages of One Thousand ($1,000.00) Dollars per each additional calendar day, during the first 30 days of delay and thereafter the sum of One Thousand Five Hundred ($1,500.00) Dollars per each additional calendar day.

(Article 3.2 of the Standard Form of Agreement Between Owner and Contractor, Docket No. 148, Ex. A.)  The construction contract provided that work on the project would commence on November 17, 2001 and had to be substantially completed 608 calendar days after said date.  (Id., Ex. A, Article 3.)  And the payment and performance bond issued by USF&G, incorporated all the terms of the construction contract.  (Id., Ex. D.)

  The parties agree that the question regarding the enforcement of the penal clause in this case is a question of law.  That does not mean that certain findings of fact might not be necessary in order to ascertain the reasonableness and legality of the clause as applied to USF&G under the particular facts of this case.  As a preliminary matter, however, I find no merit in USF&G's assertion that the clause, without more, is not enforceable against it or that it is not enforceable because the surety bond does not include a liquidated damages provision.  That is simply not so.  USF&G bound itself in the performance and payment bond to all the terms of the construction contract, including the penal clause.  WRC Props., Inc. v. Santana, 16 P.R. Offic. Trans at 172; Demas v. Builders Ins. Co., 9 P.R. Offic. Trans. at 1048-49; Olazabal v. United States Fid. & Guar. Co., 3 P.R. Offic. Trans. at 642.  I also disagree

CIVIL 01-2597 (PG)                    12

that the clause is void ab initio.  At most, USF&G might be correct in its assertion that liquidated damages should not be imposed without considering any fault that the owner might have incurred in the delay and whether the amount of the liquidated damages is excessive in light of the damages actually suffered by the owner because of the delay.  But that does not make the clause void ab initio.  It simply calls for the court's equity review of the penal clause, as authorized by article 1108 of the Civil Code, and possibly for a modification of the penalty after considering any partial or irregular performance of the obligation by the debtor.  See Levitt & Sons of P.R., Inc. v. Hernández-Denton, 105 D.P.R. 184 (1976).

It is sufficiently clear that the penalty clause in this case is not on its face invalid because in a construction contract of that magnitude, damages are almost always difficult to prove[3] and the penalty appears to be reasonable in light of the anticipated losses.  Furthermore, whether the delays in completing the project occurred through no fault of the contractor; whether the owner contributed to the delay with numerous changes of orders; whether the clause did not take into account anticipated or actual losses; and whether the liquidated damages are 10 times greater than the amount of actual damages are all questions that require resolution of a number factual disputes.  Therefore, they cannot be answered at the summary judgment stage.  I explain.

_____

[3]At the time the parties entered into the contract, there was no way to estimate with reasonable accuracy the value of the delay in this case.  In other words, it was difficult to quantify the inconvenience which would arise from said delay.

CIVIL 01-2597 (PG)                         13

First is the issue of whether the delays in completing the project were due to circumstances other than the contractor's fault, including numerous change orders. USF&G argues that the imposition of liquidated damages on it would be unfair because the delay responded in part to a severe labor shortage throughout Puerto Rico, something that was beyond the contractor's control.  According to USF&G, I&P was entitled under the terms of the contract to an absolute extension of time.[4]  In other words, under Article 8.3.1 of the construction contract, the time had to be extended when the delay was caused by reasons other than the contractor's fault, including any act or neglect of the owner causing the delay such as the requested changes and the labor shortage in Puerto Rico.  But USF&G complains that Article 8.3.1 does not prevent the unfair assessment of a penalty against the contractor because it is the architect who exclusively decides whether or not to grant the extension of time.[5]  Nevertheless, I find that there are many factual disputes

_____

[4]Article 8.3.1 of the construction contract provides that

> If the Contractor is delayed at any time in progress of the Work by an act or neglect of the Owner or Architect, or of an employer of either, ... by changes ordered in the Work, or by labor disputes, ... unavoidable casualties or other causes beyond the contractor's control, ... , the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

(General Conditions of the Contract for Construction, Docket No. 148, Ex. B, Art. 8.3.1.)

[5]An issue has been raise about the role played by architect Segundo Cardona in the Project.  USF&G complains that Cardona, who was also 40% owner of PA's special partnership, was the Architect who prepared the plans and specifications of

CIVIL 01-2597 (PG)                    14

precluding this court from making a conclusive determination on the issue. Specifically, there is a factual dispute regarding how many of the extensions of time requested by I&P under Article 8.3.1 of contract were granted by the architect. While there is some evidence that some of the requested extensions were granted and others were denied (Cardona's Aff., Docket No. 159, Ex. 5, ¶¶ 31-33), the reasonableness of the denials of extensions of time is at issue. With respect to the changes ordered, there is a factual controversy regarding the extent to which the change orders affected the "critical path" of the project as to require an extension of time. For instance, there is evidence in the record supporting PA's contention that the quantity of the change orders was statistically and numerically insignificant when compared to the contract price. (Id. ¶ 69; Decl. of Michael Harris, Docket No. 160, Ex. 20.) There is also evidence of some 33 change orders totaling $131,705.29 or 1.74% of the contract price. (Cardona's Aff., Docket No. 159, Ex. 5, ¶ 17.) There is also evidence of some extensions of time granted by virtue of these change orders. (Cardona's Decl., Docket No. 159, Ex. 5, ¶¶ 17-18; Harris Decl., Docket No. 160, Ex. 20, ¶ 6.) In fact, the architect approved an extension of time of 30.5 calendar days in January of 1999. (Cardona's Decl., Docket No. 159, Ex. 5, ¶ 18.) This evidence, coupled with the fact that I&P might not have appropriately reported the progress

_____

the Project. (USF&G Statement of Material Facts, Docket No. 127, ¶ 4.) PA denies that Cardona ever acted in the capacity of owner or owner representative of the project. Cardona is claimed to have always acted as Architect through the architectural firm of which he is a member, Sierra Cardona Ferrer. (PA's Statement of Disputed Fats, Docket No. 159, ¶3.) There is a factual dispute as to this.

CIVIL 01-2597 (PG)                              15

of the work as required by the terms of the contract (Cardona's Decl., Docket No. 159, Ex. 5, ¶ 21; Harris Decl., Docket No. 160, Ex. 20, ¶ 12; see also José Guevara's Dep., Docket No. 160, Ex. 21), make it impossible for the court to side with USF&G's position as a matter of law.  Moreover, there is also disputed evidence regarding the correlation between the liquidated damages and the actual damages (Decl. of Fernando Simó, Docket No. 159, Ex. 6, ¶¶ 30-31) making it improper for the court to determine the enforceability of the clause on that basis alone.  Therefore, at this stage, the court cannot hold as a matter of law, that the liquidated damages clause in this case is unenforceable.  The contract provided for extensions of time in case of owner-caused delays and other circumstances beyond the control of the contractor (i.e labor shortage and change orders).  The extent to which such extensions of time were requested and denied and the reasonableness of such denials, if any, is a matter not suitable for resolution at this time.  As to this issue, it is my recommendation that USF&G's motion for summary judgment be DENIED.

2.  Notice of Default

Next is USF&G's contention that summary judgment is warranted since USF&G is allegedly not obligated to perform under the bond given PA's failure to provide "sufficient, valid, and clear prior written notice" to the contractor and the surety of its intent to declare default.  According to USF&G, PA was required under the terms of the contract to give the contractor and the surety, seven days written notice of its intent to declare default.  In its memorandum of law, USF&G claims that

CIVIL 01-2597 (PG)                    16

PA sent the contractor and the surety "a single letter" on June 21, 2001, declaring the contractor in default.  Then, after PA submitted as evidence in its opposition a number of letters sent to USF&G, specifically the April 12, 2001 letter detailing the many deficiencies in the completion of the project and alerting of I&P's abandonment, USF&G filed a reply stating that said correspondence did not express an unequivocal intent to terminate and that I&P had terminated PA first for lack of payment.  As is clear from the record, USF&G is incorrect in its contention that no prior notice was given.

Article 14 of the General Conditions of the Contract for Construction provides the grounds for termination of the contract.  Specifically, in clause 14.2.1, the contract states:

> The Owner may terminate the Contract if the Contractor:
>
> > 1. persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
> > 2. fails to make payments to Subcontractors for materials or labor in accordance with the respective agreements between Contractor and Subcontractors;
> > 3. persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or
> > 4. otherwise is guilty of substantial breach of a provision of the Contract Documents.

(Docket No. 148, Ex. B, at 23.)  Article 14.2.2 further provides that

> When any of the above reasons exists, the Owner, upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other

CIVIL 01-2597 (PG)                              17

> rights of remedies of the Owner and after giving the
> Contractor and the Contractor's surety, if any, seven days'
> written notice, terminate employment of the Contractor ....

(Id. at 23-24.)  The above language is clear, that the owner must give the surety

seven days written notice before terminating the contractor.  Such proposition is not

at issue.  What is at issue is whether such notice was provided.

The record reveals that PA gave notice to USF&G through letter dated April 12,

2001, that I&P had, according to the owner, abandoned the project without

achieving substantial completion of the same.  (Docket No. 161, Ex. 35.)  In said

letter, PA expressly informed USF&G that given I&P's abandonment of the project

with substantial work remaining to be performed, that PA would "now be compelled

to complete the Project on its own unless [the surety] steps in to do so

immediately." (Id. at 2, ¶ 4.)  Furthermore, after detailing all the deficiencies in the

performance of the contractor and all the instances that in PA's opinion constituted

a breach of the construction contract, PA told USF&G that I&P was clearly in default

under the contract. (Id. at 4, ¶ 2.)  While it is true that the June 21, 2001 letter sent

to I&P officially notified both the contractor and the surety that the contractor had

been terminated for default (Docket No. 148, Ex. N), it is not correct that such was

the only notification given by PA of its intent to declare default.  In addition to the

above-referenced April 12, 2001 letter, there is evidence of several letters sent to

USF&G after I&P abandoned the project indicating that a declaration of default and

termination was not only forthcoming, but imminent.  (See Letters and

CIVIL 01-2597 (PG)                    18

Communications of April 20 and 23 and May, 7 and 11, 2001, Docket No. 162, Ex. 35.) This conclusion is confirmed by evidence in the record of communications sent by USF&G to PA acknowledging that PA would engage in completion of the remaining work to be performed, including punchlist work, and requesting that PA submit a detailed accounting of the sums expended in facilitating the completion of the punchlist. (Id., Exs. 36-37.) USF&G had clear and unequivocal notice that PA intended to declare default of I&P for the latter's abandonment of the project and failure to substantially complete the same. Such notice was received in writing more than seven days before the official termination on June 21, 2001. Thus, I cannot conclude as a matter of law that USF&G must be released from its obligation to perform under the bond.[6] As to this issue, USF&G's motion for summary judgment should also be DENIED.

_____

[6]USF&G's contention that it was I&P who terminated the owner and that I&P gave PA substantially more than seven days is well taken. USF&G relies on I&P's January 23, 2001 application for payment as the alleged notice of I&P's intent to terminate PA. In it, I&P requested "payment of work performed to date" and admonished that failure to comply would result in owner's default entitling the contractor to suspend work on the project. (Docket No. 161, Ex. 31.) USF&G also contends that the January 31, 2001 letter sent by I&P to PA was the seven days notice required by the contract. (Id., Ex. 33.) Through letter dated April 9, 2001, I&P informed that all the punchlist work had been completed and demanded payment of all the monies due. (Docket No. 148, Ex. I.) I&P did not return to the project after that time. Who terminated whom? I&P appeared to claim that it had completed the project and that it should be paid the balance of the contract price while PA vigorously claimed that no substantial completion had been accomplished and refused payment. The reasonableness of these positions in light of all the circumstances is not a determination suitable for summary disposition.

CIVIL 01-2597 (PG)                              19

3.  Substantial Completion of the Project

USF&G also claims entitlement to summary judgment on the grounds that it had no obligation to perform under the bond because the owner did not have a legal right to terminate the contractor.  According to USF&G, PA had no right to terminate I&P because there was no substantial breach of the contract.  USF&G contends that all the condo units were substantially completed[7] and that PA was able to sell all of them.  Thus, under the terms of the contract, PA could not terminate I&P and USF&G has no obligation to perform under the bond.

However, this is another issue as to which there is a controversy of material facts making the entry of summary judgment inappropriate.  For instance, in its April 9, 2001 letter to PA, the contractor claimed that it had completed all the work and demanded payment.  (Docket No. 148, Ex. I.)  On the other hand, it is evident from its many communications with I&P and USF&G that PA understood that the project had not been substantially completed given the many deficiencies found and the punchlist work remaining to be performed.  (See Docket Nos. 24, 25, 28, 29, 30, 32, 33, 34, and 35.)  As to this issue, summary judgment is also not warranted.

4.  Material Alteration of the Surety's Risk

Finally, USF&G claims that it is entitled to be released from its obligation to perform under the bond because the owner and principal altered the terms of the

---

[7]This determination requires an inquiry into the evidence of the progress of the project at the different stages and the work that remained to be performed, if any, in light of the definition of substantial completion agreed upon by the parties in the contract and their different agreements.

CIVIL 01-2597 (PG)                    20

contract without the surety's consent thus altering the surety's risk under the bond. The specific contention is that the owner, without the surety's consent, made numerous changes to the terms of the contract and entered into a letter agreement changing the time for performance and the payment terms. USF&G submits that such course of action altered its risk and limited its performance options under the bond. It is further argued by USF&G that under United States Supreme Court precedent, a surety is entitled to be released from its obligation after material changes in the contract, such as the performance time, because the liability of the surety cannot be extended by implication beyond the express undertaking made in the bond.

PA responds that the March 6, 2001 agreement entered into between I&P and PA did not alter the surety's risk in any way. The agreement was allegedly reached for the main purpose of establishing some specific grounds on which I&P could achieve substantial completion of the project. According to PA, I&P's performance had become increasingly frantic and uncoordinated and the goal of achieving substantial completion appeared to be many months ahead. In addition, it is PA's contention that in its September 7, 2002 opinion and order, the court already determined that the March 6, 2001 letter agreement did not exonerated USF&G from its obligation under the bond. Since such a ruling constitutes the law of the case, PA maintains that summary judgment on this issue should be denied.

CIVIL 01-2597 (PG)                        21

A review of the letter agreement of March 6, 2001 shows that it did not materially alter the terms of the contract and consequently the surety's risk.  The letter stated that it constituted the agreement reached at a meeting between the parties and that it would not be construed as modifying or superceding the Contract Document or the Interim Understanding and Agreement previously entered into (and to which USF&G gave its consent).  (Docket No. 148, Ex. K.)  The letter agreement covered, among other things, the delivery to PA of ARPE permits and certain certificates like Plumbing Certificate and Electrical certificate.  (Id.)  It also covered the delivery of DACO bonds and the disbursement by PA of two separate payments of $75,000.  This agreement does not appear to have altered the surety's risk since USF&G remained bound by the original contract and the Interim Understanding and Agreement.  It did not impose on I&P any onerous conditions and it is evident that irrespective of the letter agreement, PA vehemently claimed that I&P was already in breach of both the original contract and the interim agreement in that substantial completion of the project had not been achieved within the time-frame agreed upon.  In any event, I&P allegedly abandoned the project one month after executing the March 6, 2001 letter agreement.  Thus, it appears that the only effect that said agreement had on I&P, and on the surety for that matter, was that I&P managed to get disbursement of $75,000 without completing its performance on time.  The agreement cannot be construed as a material alteration on payment and performance time terms.  And as an affirmative

CIVIL 01-2597 (PG)                         22

defense, USF&G had the burden on summary judgment to show entitlement to the defense.  See Fed. Refinance Co. v. Klock, 352 F.3d 16, 31 (1st Cir. 2003) (holding that the burden of proof falls of the party asserting an affirmative defense).  USF&G has not shouldered its burden of demonstrating entitlement to the affirmative defense and that it should be discharged from its obligation under the bond as a matter of law.  Its motion for summary judgment should therefore be DENIED.

        B.  Motion for Summary Judgment Against I&P

        Also before the court is the motion for summary judgment filed by USF&G against third-party defendant I&P. In it, USF&G argues that it is entitled to summary judgment as to the issue of liability on Count I of the third-party complaint.  The crux of USF&G's contentions is that third-party defendants I&P, Fernando Vigil, Clarrise Piovanetti, Miguel A. Maldonado-López and Rosario I. Guzmán-Nieto executed a Master Surety Agreement (hereinafter "MSA") in which they agreed to exonerate, hold harmless and indemnify USF&G from and against all demands, claims, liabilities, losses and expenses incurred by having executed, provided or procured bonds on behalf of the principal (I&P).  It is thus USF&G's position that under the terms of the MSA, the third-party defendants are liable for any amounts the court may order USF&G to pay PA pursuant to the action brought by the latter against the former.  USF&G maintains that there is no factual dispute as to this issue precluding the entry of summary judgment in its favor.

CIVIL 01-2597 (PG)                          23

The third-party defendants oppose USF&G's motion for summary judgment arguing that although they do not question that they entered into the MSA, the entry of summary judgment is at this time premature because the third-party complaint is allegedly contingent upon: (1) payment to plaintiff by USF&G; (2) interpretation of the terms and conditions of the MSA; (3) USF&G's compliance with the accounting required under Article IV(C) of the MSA; (4) third-party defendants' right to question USF&G's good faith and fair dealing by excluding and not consulting third-party defendants in handling PA's claims; and (5) a determination of the reasonableness of the charges as provided by Article V(C) of the MSA.  For these reasons, third-party defendants submit the case is not ripe for the entry of summary judgment against them.

The MSA provides in relevant part that:

> The undersigned shall exonerate, hold harmless, indemnify and keep indemnified [USF&G] from and against any and all demands, claims, liabilities, loses and expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by [USF&G] by reason of (1) [USF&G] having executed, provided or procured BOND(S) in behalf of PRINCIPAL, or (2) UNDERSIGNED'S failure to perform or comply with any of the provisions of this AGREEMENT.

(Docket No. 147, Ex. 2.) The third-party defendants do not dispute having executed the MSA containing the above-transcribed indemnity clause.  They claim that the court should not find liability as a matter of law under said terms because USF&G's liability to PA has not yet been adjudicated.  They also argue that they should be

CIVIL 01-2597 (PG)                              24

allowed to attack the good faith of the surety in the handling of PA's claim and to challenge the reasonableness of the damages claimed.

    After reviewing the arguments of the parties, and given my finding above on USF&G's motion for summary judgment against PA, I find that USF&G is entitled to partial summary judgment on the issue of I&P's liability under the indemnity clause of the MSA.  The question is clearly amenable for resolution as a matter of law at this stage.  First, it is not subject to dispute that the third-party defendants bound themselves to indemnify USF&G.  Second, the terms of the MSA are clear and unambiguous.  Third, this type of claim can be appropriately brought by USF&G under Puerto Rico law.  See 31 P.R. Laws. Ann. § 4916[8]; Professional Underwriters Ins. Co. v. Distribuidora Automotriz, Inc., 121 D.P.R. 536 (1988).

---

[8]This section codifies article 1742 of the Puerto Rico Civil Code:

> The surety, even before paying, may proceed against the principal debtor:
> (1) When he is sued for the payment.
> (2) In case of bankruptcy or insolvency.
> (3) When the debtor has bound himself to relieve him from the security within a specified term, and this term has expired.
> (4) When the debt has become demandable because the term in which it should have been paid has expired.
> (5) At the end of ten (10) years, when the principal obligation has not a fixed term for its expiration, unless it be of such a nature that it cannot be extinguished except in a period greater than ten (10) years.
> In all these cases the action of the surety tends to obtain his release from the security or a guaranty to defend him against any proceedings of the creditor and from the danger of insolvency of the debtor.

31 P.R. Laws Ann. § 4916.

CIVIL 01-2597 (PG)                    25

The fact that I&P is challenging USF&G's handling of PA's claim particularly charging the surety with acting in bad faith by excluding I&P from the meeting with PA and by not consulting them with respect to PA's claim does not change this conclusion.  See, e.g., Fireman's Ins. Co. of Newark, N.J. v. Todesca Equip. Co., 310 F.3d 32, 36-37 (1st Cir. 2002).  There is nothing in the MSA agreement limiting the surety's ability and discretion to respond to a claim and I&P's argument of bad faith is not supported by evidence.  Similarly, I&P's contention that it should be allowed to challenge the reasonableness of the amount of expenses incurred by the surety in complying with its obligation under the bond is unavailing.  USF&G's motion for partial summary judgment only addresses the issue of liability.  The court is not considering any issues regarding damages. Therefore, USF&G's motion for summary judgment should be GRANTED.  A determination regarding damages must await a trial on the merits.

IV. CONCLUSION

In view of the above, it is my recommendation that USF&G's motion for summary judgment against PA be DENIED.  However, there being no controversy as to any material facts and USF&G's being entitled to judgment as a matter of law, its motion for partial summary judgment against I&P should be GRANTED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this

CIVIL 01-2597 (PG)                          26

report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 9th day of May, 2005.


S/ JUSTO ARENAS
Chief United States Magistrate Judge