**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

```
PLAZA ATHENEE, S.E.

     Plaintiff,

        v.

UNITED STATES FIDELITY AND              Civ. No. 01-2597(PG)
GUARANTY COMPANY,

     Defendant/Third-Party
   Plaintiff,

        v.

INGENIEROS & PROYECTISTAS, INC., ET
AL.,

     Third-Party Defendants.
```

**OPINION AND ORDER**

Before the Court is Chief Magistrate Judge Justo Arenas' Report and Recommendation ("R&R") (Docket No. 182) in which he recommends that Third-Party Plaintiff United States Fidelity and Guaranty Co.'s, ("USF&G") motion for partial summary judgment against Third-Party Defendants Ingenieros & Proyectistas, Inc., ("I&P") be granted. (Docket No. 126, 147, 131.) The parties filed their respective objections and responses thereto. (Docket Nos. 184, 187, 190.) For the following reasons the Court, **APPROVES AND ADOPTS IN PART** the Magistrate Judge's R&R (Docket No. 182) and **GRANTS** USF&G's motion.(Docket No. 126.)

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaza Athenee, S.E. (hereinafter "PA") is a special partnership organized and existing under the laws of the Commonwealth of Puerto Rico. As owner and developer of the project, PA entered into a construction contract with Ingenieros & Proyectistas, Inc., ("I&P") for the construction of the Plaza Athenee Condominium. The contract price for the project was $7,589,000.00. Under the terms of the contract, I&P was supposed to commence work on the project on November 17, 1997. The project had to be substantially completed within 608

calendar days or by July 17, 1999.

On September 29, 1997, defendant USF&G issued Payment and Performance Bond No. 2970123 to guarantee I&P's faithful performance of its duties and obligations under the construction contract. The bond also guarantees that the payments due by I&P to its suppliers and contractors would be made. Additionally, the bond contains a description of the project and incorporates the terms, covenants, and conditions of the construction contract.

It is alleged that on May 12, 2000, I&P was terminated for being in default pursuant to a certificate issued by the architect retained under the contract. The termination was made effective June 30, 2000. However, on July 7, 2000, after the first default termination, the parties entered into an "Interim Understanding and Agreement." The purpose of this agreement was to relieve I&P of the consequences of the first default termination and to clarify the obligations of the parties under the contract. Particularly, the agreement explicitly defined in unequivocal terms what substantial completion of the project meant so there would be no misunderstanding as to what needed to be accomplished. USF&G allegedly agreed to the terms and conditions of the "Interim Understanding and Agreement."  PA's alleges that on March 6, 2001, PA and I&P executed a letter agreement. The same did not modify any of the terms and conditions of the "Interim Understanding and Agreement." It simply delineated and refined the respective responsibilities of the parties with respect to the conclusion of the work at the condominium.

I&P is alleged to have breached the terms and conditions of the March 6 letter agreement by failing to comply with certain obligations set forth therein.  In addition, I&P allegedly abandoned the work on April 9, 2001, without having achieved substantial completion of the condominium. Therefore, on June 21, 2001, and after numerous notices, the architect once again certified I&P's default. That same date, PA notified via letter that I&P had been terminated, effective immediately, for its default under the contract. Pursuant to this second default termination, PA demanded from USF&G that the latter take over completion of the work at the condominium. USF&G in turn directed PA to

Civ. No. 01-2597(PG)                                                    Page 3

undertake completion of the project and to keep records of the expenses incurred in doing so. PA complied by submitting evidence of the expenses incurred in completing the work, including warranty work, punchlist work and expenses resulting from I&P's default. PA demanded payment from USF&G but the latter has allegedly failed and refused to comply with its obligations.

On November 21, 2001, PA filed this breach of contract claim against USF&G claiming I&P defaulted under the Contract, the Interim Agreement, and the Letter Agreement inasmuch as it failed to achieve "substantial completion" of the project which caused plaintiff to incur in expenses to complete the work. On October 9, 2002, USF&G filed a Third-Party Complaint against I&P, Fernando Vigil Fernandez, Clarisse Piovanetti, Miguel A. Maldonado, and Rosario I. Guzman Nieto (collectively "Third-Party Defendants").

## **PROCEDURAL HISTORY**

After filing the answer to the third-party complaint, (see Docket Nos. 62, 68, 70, 72) third-party defendants filed a motion to stay proceedings pending arbitration or to compel arbitration. (Docket No. 63.) That same day the fourth status conference was held and the parties were granted extensions of time to respond third-party defendants' motion. (Docket No. 64.) I&P argued that PA's claims were subject to arbitration pursuant to the contracts entered into by the parties which specifically include an arbitration and dispute resolution clause. PA argued that I&P had waived its right to invoke arbitration.

While the motion remained pending, and in light of I&P's argument that "the parties [had] to mediate and arbitrate the various issues pending between them" (See Docket No. 73 at 3), the Court referred the case to Judge David Mazzone for mediation on December 10, 2003. (Docket No. 83.) The case was to be included in Judge Mazzone's calendar of mediation conferences to take place in month of February, 2004. On January 21, 2004, Judge Mazzone issued a Notice of Mediation and scheduled a Mediation Hearing for February 12, 2004. (Docket No. 86.) According to the minutes of the mediation conference, progress was achieved and a further conference was scheduled for February 20, 2004, unless the case was settled prior to that date. (Docket No. 87.) The record lacks any

Civ. No. 01-2597(PG)                                                    Page 4

information with regards to the February 20 conference. For several months the case remained practically stayed while the parties exhausted ADR proceedings. During those months the Court believed the parties had taken advantage of the opportunity given to mediate and had reached an agreement or were close to reaching one.

Seeing that there was no activity in the case for five months, in May 2004, the Court called Judge Mazzone's office to inquire about the progress of the case. The Court learned through Judge Mazzone's law clerk that the case would not be settled or resolved. Seeing that no progress was achieved through mediation, the Court scheduled a status conference for May 28, 2004 (Docket No. 88[1].)

The Fifth Status Conference was held before Chief Magistrate Judge Justo Arenas.  At the conference, the parties requested that discovery be allowed until right before Thanksgiving, and informed that they would be ready for trial after the Christmas season. The trial time was estimated between one and two weeks. Third-party defendants informed that they might demand arbitration in local court and were granted 30 days to inform whether they would or not. Defendant and third-party plaintiff also informed that they would file motions for summary judgment later in the year. (Docket No. 90.)

On December 31, 2004, "USF&G" filed a motion for partial summary judgment against Third-Party Defendants arguing that as a matter of law, I&P is liable to it for indemnification and reimbursement. (Docket No. 126, 147, 131.) That same day, USF&G moved for summary judgment seeking dismissal of PA's complaint in its entirety. (Docket No. 127[2].) Both motions were referred to Chief Magistrate Judge Justo Arenas for a Report and Recommendation. (Docket No. 150.)

---

[1] On October 25, 2004, the Court issued its Opinion and Order denying the Motion to Stay and to Compel Arbitration, re: Docket No. 63. (Docket No. 109.) Third-party defendants moved to reconsider (Docket No. 115, 120) which was granted in part and denied in part. (Docket No. 197.)

[2] The respective oppositions of PA and I&P appear in the record at Docket Nos. 156 and 159. USF&G filed replies to both I&P's and PA's oppositions to summary judgment on March 11, 2005 and March 29, 2005 respectively. (Docket Nos. 172, 173 175.) PA filed a surreply to USF&G's reply on May 3, 2005. (Docket No. 180.)

Civ. No. 01-2597(PG)                                                    Page 5

On May 9, 2005, the Magistrate Judge issued his R&R (Docket No. 182) recommending that USF&G's motion against PA be denied but that the motion against I&P be granted. The parties filed their respective objections and responses thereto. (Docket Nos. 184, 187, 189, 190.) The last response was filed in June of 2005.

On September 01, 2005, PA filed a motion requesting that the Court schedule a status conference. (Docket No. 192.) The same was scheduled for September 22, 2005, later rescheduled for September 27 and finally held on October 19, 2005. (Docket Nos. 194, 195 & 196.) At the October 19 Status Conference, pending matters were discussed and another Status Conference was scheduled for December 14, 2005. At the December 2005 conference, the parties informed that they had been engaging in settlement negotiations. (Docket No. 217.) Accordingly, the Court did not issue a ruling on the pending motions waiting to see what was the outcome of the settlement efforts.

Recently, PA and USF&G filed a joint stipulation for voluntary dismissal given that they had reached a settlement. (Docket No. 219.) In accordance with their settlement, all claims between PA and USF&G were dismissed with prejudice. (Docket No. 221.) Therefore, USF&G's Motion for Summary Judgment against PA was was found moot. (Docket No. 127.) Accordingly, the Court will consider the pending R&R only as to USF&G's Motion for Summary Judgment against Third-party defendants.

**DISCUSSION**

**I. Standard of Review - Report and Recommendation**

Pursuant to 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); and Local Rule 503; a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." United States of America v. Mercado Pagan, 286 F.Supp.2d 231, 233 (D.P.R. 2003)(quoting 28 U.S.C. §§ 636(b)(1).) If objections are timely filed, the

District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." Felix Rivera de Leon v. Maxon Engineering Services, Inc., 283 F.Supp.2d 550, 555 (D.P.R. 2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate", however, if the affected party fails to timely file objections," 'the district court can assume that they have agreed to the magistrate's recommendation'." Alamo Rodriguez, 286 F.Supp.2d at 146 (quoting Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985).

## II. Summary Judgment

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir. 2000). To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997), through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir. 2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc.. 477 U.S. 242, 247-48 (1986). At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002).

## III. Analysis

USF&G argues that it is entitled to summary judgment as to the issue of

```
Civ. No. 01-2597(PG)                                              Page 7
```

liability on Count I of the third-party complaint. The crux of USF&G's contention is that third-party defendants executed a Master Surety Agreement (hereinafter "MSA") in which they agreed to exonerate, hold harmless and indemnify USF&G from and against all demands, claims, liabilities, losses and expenses incurred by having executed, provided or procured bonds on behalf of the principal (I&P). USF&G posits that under the terms of the MSA, the third-party defendants are liable for any amounts the court may order USF&G to pay PA pursuant to the action brought by the latter against the former. USF&G maintains that there is no factual dispute as to this issue precluding the entry of summary judgment in its favor.

Third-party defendants oppose USF&G's motion for summary judgment arguing that although they do not question that they entered into the MSA, the entry of summary judgment is at this time premature because the third-party complaint is allegedly contingent upon: (1) payment to plaintiff by USF&G; (2) interpretation of the terms and conditions of the MSA; (3) USF&G's compliance with the accounting required under Article IV(C) of the MSA; (4) third-party defendants' right to question USF&G's good faith and fair dealing by excluding and not consulting third-party defendants in handling PA's claims; and (5) a determination of the reasonableness of the charges as provided by Article V(C) of the MSA. Third-party defendants insist that the Court should not find liability as a matter of law under said terms because USF&G's liability to PA has not yet been adjudicated.

Following a careful review of the parties' arguments, the Magistrate Judge determined that USF&G is entitled to partial summary judgment on the issue of I&P's liability under the indemnity clause of the MSA. The Magistrate Judge found that the question was clearly amenable for resolution as a matter of law at this stage of the proceedings and not unripe as third-party defendants argued.

The Magistrate Judge reviewed the MSA which provides in relevant part:

> The undersigned shall exonerate, hold harmless, indemnify and keep indemnified [USF&G] from and against any and all demands, claims, liabilities, loses and

> expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by [USF&G] by reason of (1) [USF&G] having executed, provided or procured BOND(S) in behalf of PRINCIPAL, or (2) UNDERSIGNED'S failure to perform or comply with any of the provisions of this AGREEMENT.

(See Docket No. 147, Exhibit 2.) It is undisputed that third-party defendants executed the MSA containing the above-transcribed indemnity clause and that they bound themselves to it.

Third-party defendants object to the Magistrate Judge's conclusion arguing that pursuant to Puerto Rico law they are entitled to question USF&G's good faith in handling PA's claim to see if it breached that duty or not which would ultimately determine whether they have to indemnity USF&G at all. In other words, defendants argue that the Court must first determine whether USF&G acted in bad faith and breached its covenant of good faith and fair dealing before concluding as a matter of law that they are liable to USF&G. (Docket No. 187 at 6.)

There is no controversy as to the fact that third-party defendants bound themselves to indemnify USF&G. The terms of the MSA are clear and unambiguous. Accordingly, the Magistrate Judge correctly concluded that third-party defendants are liable to USF&G.

USF&G has stated a valid claim pursuant to Puerto Rico Law. See 31 P.R. Laws Ann §§ 4911-4916; Segovia Dev. Corp. v. Constructora Maza, Inc., 628 F.2d 724, 727 (1st Cir.1980); Professional Underwriters Ins. Co. v. Distribuidora Automotriz, Inc., 121 D.P.R. 536 (1988).

Section 4916 of the Puerto Rico Civil Code law states:

> The surety, even before paying, may proceed against the principal debtor:
> (1) When he is sued for the payment.
> (2) In case of bankruptcy or insolvency.
> (3) When the debtor has bound himself to relieve him from the security within a specified term, and this term has expired.
> (4) When the debt has become demandable because the term in which it should have been paid has expired.
> (5) At the end of ten (10) years, when the principal obligation has not a fixed term for its expiration, unless it be of such a nature that it cannot be

Civ. No. 01-2597(PG)                                                    Page 9

>      extinguished except in a period greater than ten (10)
>      years.

PR ST T. 31 § 4916. Hence, USF&G properly filed for summary judgment on the issue of third-party defendants' liability.

Having carefully reviewed third-party defendants' objections, the Court agrees with the Magistrate Judge's conclusions. There is nothing in the MSA agreement limiting the surety's ability and discretion to respond to a claim. Furthermore, I&P's argument of bad faith was not supported by the evidence proffered. I&P's contention that it should be allowed to challenge the reasonableness of the amount of expenses incurred by the surety in complying with its obligation under the bond does not alter the Court's conclusion inasmuch as it is not making a final determination on damages. USF&G's motion for partial summary judgment only addresses the issue of liability. As the Magistrate Judge concluded, the fact that I&P is challenging USF&G's handling of PA's claim particularly charging the surety with acting in bad faith by excluding I&P from the meeting with PA and by not consulting them with respect to PA's claim does not change the fact that pursuant to the MSA they are liable to USF&G. In their objections, third-party defendants fail to raise arguments that would make the Court alter this conclusion.

Therefore, upon *de novo* review of the exhaustive and itemized R&R, as well as the objections thereto, the Court finds no reason to depart from the Magistrate Judge's sound findings and conclusions. Accordingly, the Court ADOPTS IN PART the R&R, only as it pertains to USF&G's Motion for Summary Judgment against third-party defendants. (See Docket No. 182 at 22-26.)

## CONCLUSION

WHEREFORE the Court **APPROVES AND ADOPTS IN PART** the Magistrate Judge's R&R (Docket No. 182) and **GRANTS** USF&G's motion.(Docket No. 126.)

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, October 25, 2006.

                                        S/JUAN M. PEREZ-GIMENEZ
                                        U. S. DISTRICT JUDGE