```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF PUERTO RICO

PLAZA ATHÉNÉE, S.E.,

     Plaintiff,
                                    Civil No. 01-2597 (PG/JAF)
     v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY (USF&G),

     Defendant and
     Third-Party Plaintiff,

     v.

INGENIEROS Y PROYECTISTAS,
et al.,

     Third-Party Defendants.
```

**OPINION AND ORDER**

This is an eight-year-old civil litigation case that is being addressed as part of our obligation to dispose of three-year-old-and-older cases under the Directives of the Judicial Conference of the United States. (<u>See</u> Misc. 09-59 (JAF) (Docket No. 291).)

**I.**

**Introduction**

This case is a diversity action arising out of a controversy between a surety, Defendant and Third-Party Plaintiff United States Fidelity and Guaranty Company ("USF&G"), its principal, Third-Party Defendant Ingenieros y Proyectistas, Inc. (I&P), and a real estate development company, Plaintiff Plaza Athénée, S.E. ("PA"). Plaintiff

Civil No. 01-2597 (PG/JAF)                                                      -2-

PA filed the first of two complaints in this case against Defendant USF&G to collect monies allegedly due under a Performance and Payment Bond (the "Bond") issued by USF&G on behalf of its principal I&P. In September 2006, Plaintiff PA and Defendant USF&G reached a settlement of PA's claims. On October 30, 2006, we adjudicated the claims remaining in this case brought by USF&G as a Third-Party Plaintiff for indemnification and reimbursement against contractor I&P and its four principals, Fernando Vigil Fernández, Clarisse Piovanetti, Miguel A. Maldonado, and Rosario I. Guzmán Nieto, hereinafter collectively referred to as "I&P" (Docket No. 227), after which USF&G moved for damages. On June 22, 2009, we granted, in part (Docket No. 297),[1] USF&G's "Motion for Summary Judgment of Third Party Plaintiff United States Fidelity And Guaranty Company as to Damages on Count I of USF&G's Third Party Complaint" ("USF&G's Motion") after finding insufficient evidence to support I&P's claim that USF&G made payments[2] in bad faith in violation of Paragraph IV(A)[3] of the Master Surety Agreement ("MSA"). Third-Party Defendant I&P now moves for

---

[1] We declined to award USF&G interest on damages.

[2] The payments at issue include payments made to Plaintiff PA in settlement of PA's claims, as well as fees and costs paid to counsel for USF&G. (*See* Docket No. 268-2, at 39, III(A) and IV(A).)

[3] Paragraph IV(A) of the MSA reads as follows: "The liability of UNDERSIGNED [I&P] shall extend to and include all amounts paid by SURETY [USF&G] in good faith under the belief that: (1) SURETY [USF&G] was or might be liable therefor; (2) such payments were necessary or advisable to protect any of SURETY'S rights or to avoid or lessen SURETY's liability or alleged liability." (Docket 268-2 at 39.)

Civil No. 01-2597 (PG/JAF)                                              -3-

reconsideration pursuant to Federal Rule of Civil Procedure 59(e) (Docket No. 300), which Third-Party Plaintiff USF&G opposes (Docket No. 302). By separate motion and pursuant to our invitation (Docket No. 297 at 30),[4] I&P submits a supplemental motion for our consideration regarding the reasonableness of fees claimed in USF&G's Motion (Docket No. 299), which USF&G opposes (Docket No. 301).

## II.
## Standard of Review

We entertain motions for reconsideration to (1) correct manifest errors of law or fact, (2) consider newly-discovered evidence, (3) incorporate an intervening change in the law, or (4) otherwise prevent manifest injustice. See Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (citing 11 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed.1995)); see also Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997); FDIC v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992).

## III.
## I&P's Motion for Reconsideration (Docket No. 300)

I&P moves for reconsideration on two grounds. First, I&P contends that we applied the wrong law. Specifically, I&P asserts

---

[4] By Order and Opinion dated June 22, 2009 (Docket No. 297), we unsealed billing statements submitted by USF&G to support the fees claimed in USF&G's Motion and invited I&P to submit argument regarding the reasonableness of such fees.

Civil No. 01-2597 (PG/JAF)                                              -4-

that we erred in not considering USF&G's duty of good faith beyond Paragraph IV(A)[5] of the Master Surety Agreement ("MSA"). (Docket No. 300.) I&P claims that USF&G's alleged "bad faith" conduct[6] should have been evaluated for compliance with USF&G's general duty of good-faith performance under Puerto Rico common law and Article 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3375.[7] Id. Although we typically do not entertain motions for reconsideration to the extent it would require us to rehash old arguments, Standard Quimica De Venezuela v. Central Hispano International, Inc., 189 F.R.D. 202, n.4 (D.P.R. 1999), we take this opportunity to more fully explain our rejection of I&P's good-faith argument.

As noted in our Opinion and Order of June 22, 2009, we recognize that Puerto Rico law imposes a general duty of good faith on contracting parties, see An-Port, Inc. v. MBR Industries, Inc., 772 F.Supp. 1301, 1314 (D.P.R. 1991); AMECO v. Jaress Corp., 98 P.R.R. 820 (1970); 31 L.P.R. § 3375. In opposition to USF&G's Motion and again on motion for reconsideration, I&P offers Puerto Rico authority

---

[5] Supra, note 3.

[6] I&P's opposition is replete with allegations that USF&G conducted itself in bad faith, the majority of which are allegations that USF&G did not adequately consider potential defenses to liability and did not consult I&P during the litigation and settlement of PA's claims.

[7] Article 1210 reads as follows: "Contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfilment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law." 31 L.P.R.A. § 3375 (emphasis supplied).

governing the implied duty of good faith in support of its position that USF&G's conduct need only rise to the level of "negligent" conduct to constitute "bad faith" conduct. We would be more inclined to rely on I&P's authority — if it were more on point. I&P's authority does not concern the liability of a principal for indemnification under a surety agreement and the notion of "good faith" as it is incorporated into the express language of such agreements; rather, I&P's authority concerns an <u>implied duty</u> of good faith performance under other types of contracts. <u>See, e.g.</u>, <u>Oriental Financial Services v. Nieves, 2007 T.S.P.R. 193</u>; <u>Colón v. Glamour Nails & Boutique</u>, 2006 T.S.P.R. 16 (2006); <u>Rodriguez Reyes v. Caribbean Hospital Corp.</u>, 141 D.P.R. 182 (1996); <u>González v. The Commonwealth Insurance Company</u>, 140 D.P.R. 673, 683 (1996). This is understandable as Puerto Rico law is silent on the meaning of "good faith" when it is used in an express stipulation of what tend to be form surety agreements. We, therefore, look to other law for guidance. There is ample federal case law that directly addresses the issue, which we review in our Opinion and Order. (<u>See</u> <u>Docket No. 297 at 17-21</u>.) Such authority concerns surety agreements with the same or similar language as that found in paragraph IV(A) of the MSA. We find this authority to be on point and controlling.

Our decision to rely on federal authority does not offend Article 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3375. Article 1210 recognizes the binding nature of a contract's express

Civil No. 01-2597 (PG/JAF)                                          -6-

stipulations. 31 L.P.R.A. § 3375 ("they are binding, not only with regard to the fulfilment of what has been *expressly stipulated*,").[8] Having found the alleged conduct to fall within the scope of paragraph IV(A), we appropriately analyze the meaning of "good faith" under case law that addresses the meaning of "good faith" when used in the same or similar surety agreement provisions.  There is no need to consider USF&G's duty of good faith beyond paragraph IV(A) of the MSA.

I&P's second contention is that we improperly assessed the credibility of deposition testimony provided by USF&G's Rule 30(b)(6) witness, Ms. Cristine Alexander.[9] Both I&P and USF&G rely considerably on Ms. Alexander's deposition testimony in their pleadings. (See Docket Nos. 268 at 19-23 (I&P's opposing and counter statement of material facts) and 282 at 01-03, 15-17 (USF&G's opposing and counter statement of material facts.)[10] Now, for the first time, I&P brings into issue the credibility of Ms. Alexander's deposition testimony, alleging that "her demeanor and body language at the deposition casts a doubt on the veracity of her testimony and would disclose that her actions or inaction were intentional, irresponsible, grossly

---

[8] *Supra*, note 7.

[9] Ms. Alexander is the USF&G claims handler who managed and authorized the settlement of claims brought by Plaintiff PA.

[10] On May 29, 2009, we ordered USF&G to file a complete copy of Ms. Alexander's deposition testimony in order to review pages relied on by USF&G that were not available in the record (See Docket No. 268-7)(partial copy of deposition testimony of Ms. Alexander); (Docket No. 294.)

negligent or negligent." I&P's credibility argument is flawed for two reasons. First, I&P failed to develop its credibility theory in either its opposition or sur-reply. As such, we decline to reconsider our decision on grounds that Ms. Alexander's testimony lacks credibility. Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006). Second, a determination of whether or not Ms. Alexander's actions were irresponsible or negligent is not dispositive of whether USF&G conducted itself in good faith pursuant to paragraph IV(A). As stated in our Opinion and Order, to demonstrate that USF&G violated the good-faith provision in paragraph IV(A) of the MSA, I&P would have to produce more than evidence of bad judgment, lack of diligence, simple negligence, or even gross negligence. (Docket No. 297 at 20.) It was I&P's burden to demonstrate that USF&G conducted itself with dishonest purpose, improper motive, recklessness, or breach of a known duty through motive or self-interest or ill will in order to overcome summary disposition. Under this standard, we found the evidence before us to be deficient, and we fail to see how Ms. Alexander's demeanor and body language would make up the deficiency.

Having considered the arguments of both parties, we find our reliance on federal authority and Ms. Alexander's deposition testimony to be proper. Accordingly, Third-Party Defendant I&P's motion for reconsideration is **DENIED**.

## II.

## Supplemental Motion on Reasonableness of Attorney's Fees

Having reviewed for the first time the billing statements of USF&G's counsel, I&P contends that we erred in our determination that the fees claimed in USF&G's Motion are reasonable. I&P argues under Rule 1.5 of the Model Rules of Professional Conduct that the fees requested by USF&G are unreasonable (1) where USF&G utilized state-side attorneys for the research of local Puerto Rico civil law matters, (2) in consideration of USF&G's "actual potential exposure" (Docket No. 299 at 5), and (3) where fees are imposed for duplicate and excessive work, or clerical work. In opposition, USF&G argues that I&P's claims are self-serving, inaccurate, and unsupported by law or any industry standard.

Having reviewed I&P's motion and USF&G's opposition thereto in conjunction with the billing statements of counsel for USF&G, we are persuaded by I&P's argument with respect to invoice numbers 18244 (6/16/02), 24794 (7/20/04, 7/29/04, 7/29/04), 25426, 26187 (12/31/04, 12/16-31/2004), 26413, 26706, 27029, 27659, 28590, 29860, and 31391. Accordingly, I&P's motion is **GRANTED, in part.** Our prior Opinion and Order, dated June 22, 2009 (Docket No. 297), is hereby amended to

Civil No. 01-2597 (PG/JAF)                                                -9-

reflect a downward adjustment in fees awarded as damages to USF&G in the amount of $11,294.32.[11]

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 24th day of July, 2009.

                                        S/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U. S. District Judge

---

[11] Invoices subject to a downward adjustment and the corresponding amount of adjustment are as follows: 18244 ($80), 24794 ($407.50 for filings), 25426 ($237.50 for filings and $608.57 for sur-reply), 26187 ($150 for filing and $7,500 for motion), 26413 ($912 for filing), 26706 ($56.25), 27029 ($225), 27659 ($230), 28590 ($600), 29860 (187.50), and 31391 ($100).